UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sharon D. Delesline-Meggett, | ) | Civil Action No.  5:20-cv-1411-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Andrew M. Saul, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.    Relevant Background

A.    Procedural History

On May 17, 2016, Plaintiff filed an application for DIB alleging disability as of September 10, 2015.[1] Tr. 166-68. Plaintiff's claim was denied initially, Tr. 70, and upon reconsideration, Tr. 84, and Plaintiff requested a hearing, Tr. 96-97. On August 16, 2018, a hearing was held before Administrative Law Judge ("ALJ") Ethan Chase and testimony was taken from Plaintiff, who was represented by counsel, and from vocational expert ("VE") Dawn Bergren. Tr. 35-57. On February 8, 2019 the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 15-28.

---

[1] Citing to her pre-hearing brief, at the administrative hearing Plaintiff amended her alleged onset date to September 21, 2015, the date of her first stroke. Tr. 38, 291.

Plaintiff requested review of the decision from the Appeals Council. Tr. 163-64. After granting Plaintiff an extension, on February 13, 2020 the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed April 14, 2020. ECF No. 1.

B.     Plaintiff's Background

Born in February 1959, Plaintiff was 56 years old as of her amended alleged onset date of September 21, 2015. Tr. 38, 178. In her initial Disability Report-Adult form Plaintiff noted that she completed the 12th grade in 1978, did not attend special education classes, and in 2000 she completed technical school secretarial training. Tr. 184. Plaintiff listed her past relevant work ("PRW") as summary court specialist (Feb. 1992- Sept. 2015). Tr. 185. Plaintiff indicated that she stopped working on September 10, 2015 because of the following medical conditions: high blood pressure, hyperthyroidism, diabetes, blurred vision, ataxia, paresthesia, and cerebrovascular accident ("CVA"). Tr. 183-84. Plaintiff indicated that she is 5'8" tall, weighed 270 pounds, and her conditions caused her pain or other symptoms. Tr. 183.

An October 19, 2016 Disability Report-Appeal completed by Plaintiff's counsel indicated a change in Plaintiff's medical conditions that occurred December 29, 2015. Tr. 229. Plaintiff indicated that she experienced the following physical symptoms and mental symptoms: "dizziness, lack of balance, lightheadedness, pain, tingling, trouble sleeping/insomnia; vision problems (blurry vision); hearing problems (I have hearing issues from the stroke on left side but the doctors can't see anything when I've been check[ed] on.). . . [and] irritability, mood swings[.]" *Id.* Plaintiff indicated she had limitations in "bending, kneeling, reaching, squatting, stair climbing, walking, standing, sitting, difficulty following instructions, difficulty understanding, short-term memory

loss, and trouble with concentration/thought process. *Id.* Plaintiff indicated a change in her daily activities which she described as difficulty with sleeping, cooking, completing tasks, driving, shopping, and social activities. Tr. 235. She indicated that she had no difficulty with personal care. *Id.*

C.    Administrative Proceedings

Plaintiff appeared with counsel in Charleston, South Carolina for her administrative hearing on August 16, 2018. Tr. 35. VE Bergren also appeared and testified. *Id.*

1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff provided her birthdate and confirmed that she was amending her onset date to September 21, 2015 and would have been of advanced age as of that date. Tr. 38. Plaintiff stated that her highest level of education was the 12th grade. *Id.* Plaintiff testified that she was not working and had last worked September 11, 2015 as a summary court clerk. Tr. 39. Plaintiff stated that in that job she filled out applications for people coming to court, set court dates, and provided necessary forms. *Id.* Plaintiff stated that her work involved very little physical labor, lifting and carrying files, or standing and walking. *Id.* She testified that she stopped working because she had a stroke. *Id.* Plaintiff testified that residual problems from the stroke include constant dizziness and loss of balance for which she uses a cane. Tr. 40. Plaintiff stated that because of the stroke she has problems with her eyes that include blurriness and the inability to read small print, and she does not drive much. Tr. 40-41.

Plaintiff was unable to recall the actual reduction in her vision. Tr. 41. The ALJ discussed with Plaintiff's counsel the possibility of ordering a visual consultative exam. *Id.* Plaintiff indicated that she does not drive much because she sometimes has double vision, both in the daytime and nighttime. Tr. 42-43. Plaintiff indicated that if her vision was at a pre-stroke level she thought she

could return to work, but she noted that she gets "terrible headaches looking at the computer." Tr. 43. Plaintiff stated that she has headaches every day on the left side of her head. Tr. 43-44. Plaintiff testified that the pain starts in her head and "it trickles down to [her] arm, fingers." Tr. 44. Plaintiff stated that her left leg is not affected. *Id.* She stated that both arms hurt, but she can use both hands most of the time. *Id.* Plaintiff testified the problems are more on her left side, and she is right-handed. *Id.* Plaintiff stated that she has to pick up things with her right hand because she will sometimes drop things with her left hand. Tr. 45. Plaintiff testified that she tries to use both hands for fine manipulation, keyboard entry, or picking up small items, and she can still use a computer or keyboard. *Id.* Plaintiff testified that doctors told her that her headaches were "stroke related." *Id.* Plaintiff also testified that she does not "remember things very well." Tr. 46. She stated that she did not have any sort of physical or mental rehabilitation after the stroke, and she did not have any formal cognitive testing. *Id.* Plaintiff stated that she has problems remembering appointments and has to write them on a calendar. *Id.* Plaintiff stated that she lives with her 65-year-old husband who is working. Tr. 46. Plaintiff testified that she handles the household bills and does not have any trouble with that. Tr. 46-47.

In response to questions from her counsel Plaintiff confirmed that she has chronic headaches that occur daily. Tr. 47. Plaintiff stated that the headaches last almost all day and most of the time she wakes up with them. *Id.* Plaintiff testified that when she wakes up with a headache, she checks her blood pressure, and "that's usually elevated" so she takes her medicine and goes back to sleep for a while. *Id.* When asked if that solves the problem, Plaintiff responded: "Not really." *Id.* Plaintiff thought the headaches would be distracting if she went back to work because she would be "working with the public and telephone. Doing stuff all day long." Tr. 48. Plaintiff testified that she has daily facial pain that lasts all day, but because of all her other medications

she does not take anything for pain. *Id.* Plaintiff testified that the dizziness she experiences is in her head and feels like vertigo. Tr. 49. Plaintiff stated that she did not have the dizziness before the stroke, and it has gotten worse since her most recent stroke. *Id.* Plaintiff testified that it affects her ability to do things around the house and she spends most days sleeping off and on. Tr. 49-50. Plaintiff stated that she naps three or four times a day, and she attributed it to her medicine. Tr. 50. Plaintiff indicated the naps last about 15 minutes. Tr. 51. Plaintiff indicated that her memory loss has gotten worse since her most recent stroke, and she has trouble remembering names and locations. *Id.* Plaintiff testified that recently she was driving about a mile to her sister's house and lost her sense of direction. Tr. 51-52. Plaintiff stated that the farthest distance she drives is within a mile radius. Tr. 52.

Plaintiff confirmed that she had carpal tunnel surgery on both her wrists, with the most recent one in 2015 just before her stroke. Tr. 52. Plaintiff stated that her hands hurt, and she felt that the left hand hurt because of the stroke. Tr. 53. Plaintiff confirmed that she has difficulty with concentration, but she thought she could watch a 30-minute TV show although her mind "drifts." *Id.* Plaintiff indicated that she did not believe she would be able to mentally complete tasks and keep up with work like she did before the stroke. *Id.*

In response to questions from the ALJ, Plaintiff testified that her job was "high pressure" with a lot of things going on at the same time. Tr. 54. Plaintiff indicated that she would have difficulty multitasking because of the stroke. *Id.*

### 2. VE's Testimony

The VE described Plaintiff's PRW as court clerk, Dictionary of Occupational Titles ("DOT") number 243.362-010, sedentary exertion level, SVP of 6, skilled. Tr. 55. The ALJ asked the VE to "assume an individual with claimant's same age, education, and work experience limited

to sedentary work; occasional posturals but no climbing ladders, ropes, or scaffolds; may frequently handle and finger; should avoid exposure to extreme heat, excessive humidity and wetness; avoid all exposure to hazards and unprotected heights." *Id.* The VE confirmed that person would be able to do Plaintiff's past work. *Id.* The VE also testified that the person would be able to do that job with a handheld assistive device for ambulating. *Id.*

The ALJ asked if the person would be able to perform Plaintiff's past work "if the individual can only occasionally work with small objects, read small print, or work with other objects that require fine visual acuity." Tr. 55-56. The VE responded in the negative. Tr. 56.

The ALJ asked the VE to "assume the same limits as in hypothetical two but assume the individual would not be able to sustain sufficient concentration, persistence, or maintain pace for a combination of reasons." Tr. 56. The VE testified that person would be unable to perform Plaintiff's past work. *Id.*

Plaintiff's counsel had no questions for the VE. Tr. 56. The ALJ indicated that he would order a visual consultative exam and a cognitive evaluation because "[s]ome people have measurable cognitive declines after strokes." *Id.*

II.   Discussion

A.   The Commissioner's Findings

In his February 8, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2.   The claimant has not engaged in substantial gainful activity since September 21, 2015, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

6

3.    The claimant has the following severe impairment: late effects of cerebrovascular accident (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). Sedentary exertional work is described by the Commissioner of the Social Security Administration as requiring lifting/carrying no more than 10 pounds at a time, sitting for six hours in an 8-hour workday, and standing and walking for two hours in an 8-hour workday. The claimant can perform occasional postural movements and can frequently perform handling and fingering, but cannot climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to temperature extremes, humidity, unprotected heights, and workplace hazards. She requires a hand-held assistive device for ambulating.

6.    The claimant is capable of performing past relevant work as a court clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2015, through the date of this decision (20 CFR 404.1520(f)).

Tr. 20-21, 23, 28.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

        2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.     Analysis

Plaintiff alleges (1) in assessing her residual functional capacity ("RFC") the ALJ failed to properly evaluate medical opinion evidence, (2) the ALJ failed to properly consider her symptoms, and (3) the ALJ's finding that she could return to her PRW is not supported by substantial evidence. Pl.'s Br. 1, ECF No. 15.

A.     ALJ's RFC Assessment and Consideration of Opinion Evidence

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is

not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*

(emphasis in original). In formulating the RFC, the ALJ is to consider all impairments, even those

that are not severe, "and revie[w] 'all relevant medical and other evidence.'" *Jackson v. Berryhill*,

2017 WL 685603, at *6 (E.D.N.C. Jan. 23, 2017). The ALJ must "first identify the individual's

functional limitations or restrictions and assess his or her work-related abilities on a function-by-

function basis, including the functions listed in the regulations." *Monroe v. Colvin*, 826 F.3d 176,

187–88 (4th Cir. 2016). The RFC must include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts such as laboratory findings and non-medical

evidence like daily activities and observations. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir.

2015). Additionally, "in evaluating the effect[] of various impairments . . . , the [ALJ] must

consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v.*

*Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted).

Here, the ALJ considered Plaintiff's hearing testimony, medical records from her treating

and consulting physicians, and the opinions of two state agency medical examiners and concluded

Plaintiff had the RFC to perform less than the full range of sedentary work. Tr. 23-28. Plaintiff

argues that the ALJ failed to properly consider the report of Dr. McClain, the reports of the State

agency medical consultants, and the report of Dr. Ellyn and their impact on her RFC. Pl.'s Br. 15-

17.

### 1.  Mark McClain, Ph.D.

On September 27, 2018, after the administrative hearing and at the request of the ALJ, Dr.

McClain completed a psychological evaluation of Plaintiff. Tr. 721-25. During the initial

evaluation Plaintiff reported that "she is able to care for her personal needs and perform activities

of daily living independently." Tr. 721. She reported that she has "noticed a decline in her

academic skills following the TIAs. She stated that she is able to read and can perform simple mathematics computations." *Id.* Plaintiff also stated that she has a checking and savings account and "she can count money and figure out her own bills. She presents as being able to understand and manage finances independently." *Id.* Dr. McClain reported that during her mental status exam Plaintiff's "speech was spontaneous and her vocabulary as well as her communication skills were considered average." Tr. 722. He indicated her "thought processes were considered logical, coherent, and organized." *Id.* In addition to his clinical interview, Dr. McClain administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") and the Wide Range Achievement Test-5 ("WRAT-5"), and indicated the following: "In summary, testing results, behavioral observation, and clinical interview reflect a 59-year-old female who is currently functioning in the low average range of intelligence and in the low average to average range of overall academic achievement as measured by the current administrations of the WAIS-IV and WRAT-5 respectively." Tr. 723-24. Dr. McClain noted that because there was no information available as to Plaintiff's academic and cognitive functioning prior to her TIAs, it was "not possible to predict whether her current performance reflects a decline in intellectual and achievement functioning as compared to her abilities prior to the TIAs." Tr. 724. Taking into consideration Plaintiff's report of noticing a decline in her academic skills, he gave Plaintiff a "rule out diagnosis"[3] for mild neurocognitive disorder. *Id.* Dr. McClain concluded: "Based on her presentation, it is predicted that mental health issues would not significantly impact her ability to concentrate and perform work-related tasks. It

---

[3] "'Rule out' in a medical record means that the disorder is suspected, but not confirmed—i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

is also predicted that she would have difficulty with work-related tasks which use more than simple mathematics computation skills." Tr. 725.

On the same day as his evaluation, Dr. McClain completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) questionnaire. Tr. 726-28. Dr. McClain indicated that Plaintiff would have "mild" limitations in the ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Tr. 726. Dr. McClain noted that the factors supporting his assessment were "Intellectual functioning in low average range of intelligence." *Id.* Dr. McClain indicated that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting was not affected by her impairments. Tr. 727. When asked to identify any other capabilities affected by the impairment, Dr. McClain noted that Plaintiff reported a "decline in academic skills and indicated that it takes her longer to complete tasks following her TIA. She also exhibits weakness in math skills. She obtained a standard score of 80 on the math computation subtest of the WRAT-5 which falls in the extreme low end of the low average range. This suggests she would have difficulty with tasks that require use of math skills." *Id.* Dr. McClain indicated that Plaintiff could manage benefits in her own best interest. Tr. 728.

The ALJ considered Dr. McClain's opinion and gave it "great weight because the opinion is well explained, from an acceptable medical source, and consistent with the records as a whole, particularly multiple physical examinations and mental status examinations from MUSC." Tr. 27. Plaintiff argues that "[d]espite neither stating nor explaining any rejection, the ALJ set forth an RFC that incorporates *no* mental functional limitations." Pl.'s Br. 15 (emphasis in Plaintiff's

Brief). Plaintiff contends that the ALJ's findings are not based on substantial evidence and his failure to "account for or properly reject the evidence of [her] numerical reasoning and arithmetic computation limitations was not harmless error." *Id.* The Commissioner argues that the ALJ "thoroughly considered the report underlying Dr. McClain's opinion, including findings related to Plaintiff's mathematic abilities (Tr. 27). However, the ALJ was not required to weigh separately every finding contained in Dr. McClain's report when addressing the opinion." Def.'s Br. 14. The Commissioner further contends that "Dr. McClain's findings related to Plaintiff's mathematical abilities do not undermine the ALJ's determination that Plaintiff was able to perform her past relevant work as a court clerk, a job that requires no more than basic mathematic skills." *Id.* On Reply, Plaintiff argues that the Commissioner's position ignores the fact that Dr. McClain's testing placed her mathematical abilities "at the 9th percentile, equivalent to the third grade level,"[4] Dr. McClain opined that she would have difficulty with tasks requiring use of math skills, and "Dr. McClain suspected the onset of a neurocognitive disorder,[5] in part due to the contrast between [her] testing results and her prior performance of work as a governmental summary report clerk."[6] Pl.'s Reply 2, ECF No. 19.

A plaintiff's RFC is an administrative finding that is based on the entire record, not on a single medical opinion. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011)

---

[4] The WRAT-5 Math Computation Score indicated a Standard Score of 80, Percentile 9, and Grade Equivalent 3.8. Tr. 274.

[5] Based on Plaintiff's self-report of a decline in her academic skills, Dr. McClain gave Plaintiff "a rule out diagnosis . . . for *mild* neurocognitive disorder." Tr. 724 (emphasis added).

[6] Dr. McClain indicated that it was impossible to predict whether Plaintiff's current test performance reflected a decline in her intellectual and achievement functioning as compared to her abilities prior to the TIAs. Tr. 724. Interestingly, although Plaintiff tested low on math computation, her WRAT-5 Word Reading Score indicated a Standard Score of 97, Percentile 42, and Grade Equivalent of greater than 12.9. *Id.*

(recognizing that RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record" and does not require an expert medical opinion). As noted by the Commissioner, even if the ALJ gives significant weight to a medical source's opinion, the ALJ is not required to adopt every conclusion contained therein. *Cook v. Colvin*, No. 2:13-CV-30155, 2015 WL 430880, at *12 (S.D.W. Va. Jan. 30, 2015) ("[T]he ALJ may give great to an expert's opinion without incorporating every finding, limitation, and assessment contained in the expert's record."). Plaintiff cites to Dr. McClain's test results and his opinion regarding her math skills to support her contention that the ALJ's RFC finding was not based on substantial evidence. However, the record indicates that the ALJ did consider this evidence in making his RFC determination. At Step Two of the sequential evaluation process the ALJ found that Plaintiff's "medically determinable mental impairment of residuals of a CVA does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Tr. 21. The ALJ noted that in making this finding he "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders . . . ." Tr. 22. The ALJ determined that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Id.* In his discussion of both these functional areas, the ALJ noted that Plaintiff indicated the ability to handle money and pay bills. *Id.* The ALJ found Plaintiff had no limitations in the areas of interacting with others and adapting or managing oneself. *Id.* The ALJ determined that because Plaintiff's medically determinable mental impairment caused no more than a mild limitation in any functional area, the impairment is nonsevere. *Id.* Accordingly, the ALJ did not include any mental limitations in his RFC assessment. Tr. 23. As a part of his RFC determination, the ALJ

considered Plaintiff's testimony, the objective medical findings, and medical source opinions. Tr. 24-27.

As discussed above, the ALJ considered Dr. McClain's conclusion that "based on her presentation, mental health issues would not significantly impact the claimant's ability to concentrate[] and perform work-related tasks, but would likely have problems with tasks that used more than simple mathematics computation skills (Exhibit 12F)." Tr. 27. Plaintiff's argument that the ALJ should have included more limitations in the RFC assessment is unsupported because the ALJ did not find that Plaintiff's mental functioning was more than minimally impaired. "[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations." *Presnell v. Colvin*, No. 1:12-CV-299-FDW, 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013).  Furthermore, Plaintiff's own statements support the RFC. In her Function Report Plaintiff noted as part of her daily activities that she fills out forms that she receives from various agencies and returns phone calls, Tr. 218; she indicated that she does not like to cook but that she does "some baking from time to time," Tr. 219; and she indicated that she is able to pay bills, count change, handle a savings account, and use a checkbook or money orders although she gets "a little confused in counting bills sometimes," Tr. 220-21. At the administrative hearing Plaintiff testified that she handles the household bills and does not have any trouble with doing that. Tr. 46-47. The court finds that the ALJ did not commit reversible error for failing to include mental or math-related limitations in his RFC assessment.

2.  State Agency Physicians

Plaintiff contends that the opinions of the non-examining State agency medical consultants do not provide substantial evidence to support the ALJ's RFC finding and because the opinions

"lacked the requisite contextual consideration, the ALJ's granting of great weight to these conclusions amounts to further error." Pl.'s Br. 16.

On August 25, 2016 Dr. Mary Lang completed a Physical Residual Functional Capacity Assessment as part of Plaintiff's initial disability determination. Tr. 64-67. Dr. Lang indicated that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday with normal breaks, sit for about 6 hours in an 8-hour workday with normal breaks, and had no limitations for push/pull other than shown for lift/carry. Tr. 65. She indicated Plaintiff could occasionally climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. *Id.* Dr. Lang indicated that Plaintiff had no manipulative, visual, or communicative limitations. Tr. 65-66. She indicated Plaintiff had no environmental limitations other than she should avoid concentrated exposure to noise and hazards. Tr. 66.

On January 20, 2017 Dr. Angela Saito completed a Physical Residual Functional Capacity Assessment of Plaintiff on reconsideration of her disability determination. Tr. 79-82. She indicated Plaintiff could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds, stand and/or walk for 2 hours with normal breaks, sit for about 6 hours in an 8-hour workday with normal breaks, and was unlimited for push/pull other than shown for lift/carry. Tr. 79. Dr. Saito indicated Plaintiff could occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 79-80. She found Plaintiff had no manipulative, visual, or communicative limitations. Tr. 80. As for environmental limitations, Dr. Saito indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity and she should avoid even moderate exposure to hazards such as machinery and heights. *Id.* Dr. Saito noted that Plaintiff's "statements concerning intensity, persistence, and

limiting effects are supported by the diagnostic testing and clinical findings immediately post event; however, improvement has occurred clinically per the majority of evidence in the file. Claimant reports to drive short distances, perform [household] chores and majority of recent exams noted normal neurologic exams including coordination, fine motor." Tr. 81.

On February 14, 2017 Dr. Francis Buda completed a Physical Residual Functional Capacity Assessment of Plaintiff. Tr. 560-67. He indicated that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk for at least 2 hours in an 8-hour workday with normal breaks, and was limited in her upper and lower extremities due to sensory loss. Tr. 561. Dr. Buda indicated that Plaintiff could occasionally climb ramp/stairs, never climb ladder/rope/scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 562. As to manipulative limitations, he indicated that Plaintiff was not limited in reaching, but "handling and fingering on left limited to frequent but no repetitive feeling limited to occasional on left." Tr. 563. Dr. Buda indicated that Plaintiff had no visual or communicative limitations, but he noted environmental limitations that she should avoid extreme cold, extreme heat, and machinery hazards. Tr. 563-64. Regarding Plaintiff's symptoms he noted that "claimant's allegation concerning [status post] cva and neuropathy consistent with medical data." Tr. 565.

The ALJ gave "great weight" to the opinions of the State agency medical consultants "because they are consistent with the record and from several different acceptable medical sources who had the opportunity to review the file, particularly post hearing consultative examiners." Tr. 27. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified ... [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings

and other opinions . . . as opinion evidence." 20 C.F.R. § 404.1527(e)(2)(i).[7] If supported by the

medical evidence as a whole, an ALJ may assign great weight to state agency consultants who

have not had the benefit of the full record. *See Tanner v. Comm'r of Soc. Sec.,* 602 F. App'x 95,

101 (4th Cir. 2015) (unpublished) (stating that while the state agency consultants did not have

benefit of the whole record, "the ALJ did, and he made clear that their findings were consistent

with the evidence of record, including evidence submitted since the date of reconsideration").

Upon review, the court finds that the ALJ properly considered the state agency consultants'

assessments. This court may not reweigh the evidence or substitute its own judgment for the

Commissioner's, even if it finds the evidence is susceptible to more than one rational

interpretation. *See Hays,* 907 F.2d at 1456.

    3. Dr. John C. Ellyn

On October 3, 2018, after the administrative hearing and at the request of the ALJ, Dr.

Ellyn completed a Vision Exam of Plaintiff. Tr. 715-19.   Regarding Plaintiff's current ocular

history, Dr. Ellyn noted "dizzy when eye closed and in dark" and he noted her past medical history

of diabetes and hypertension. Tr. 716. After examination Dr. Ellyn provided a diagnosis of diabetic

retinopathy and early cataracts. Tr. 719. His opinion noted the following: "She is under the care of

---

[7] This version of 20 C.F.R. § 404.1527 was in effect at the time Plaintiff filed her claim for DIB.
The regulation was revised effective March 27, 2017 and provides the following: "Evidence from
our Federal or State agency medical or psychological consultants. The rules in § 404.1513a apply
except that when an administrative law judge gives controlling weight to a treating source's
medical opinion, the administrative law judge is not required to explain in the decision the weight
he or she gave to the prior administrative medical findings in the claim." 20 C.F.R. § 404.1527(e).
Section 404.1513a provides: "Administrative law judges are not required to adopt any prior
administrative medical findings, but they must consider this evidence . . . as appropriate, because
our Federal or State agency medical or psychological consultants are highly qualified and experts
in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).

retinal specialist. As long as she continues follow up with him (Dr. Jubla) [sic], she should do fine from ophthalmology point." *Id.*

The ALJ gave Dr. Ellyn's opinion "great weight because the opinion is well explained, from an acceptable medical source, and consistent with the records as a whole, particularly Eyes on Eyes, and multiple physical examinations from MUSC. Specifically, by the claimant's own account and other evidence of record, she has a longstanding history of wearing glasses for vision correction." Tr. 27.

Plaintiff argues that the ALJ's consideration of Dr. Ellyn's opinion "does not make apparent how the ALJ considered [her] uncontradicted report of dizziness when closing her eyes (Tr. 716), which goes beyond problems with visual acuity." Pl.'s Br. 17. The Commissioner asserts that the ALJ sufficiently explained his consideration of the opinion, again noting the "ALJ was not required to discuss every tidbit of evidence contained in the consultative examination report, including Plaintiff's subjective report of dizziness to Dr. Ellyn." Def.'s Br. 16.

In summarizing his discussion of his RFC assessment, the ALJ noted that "there is no etiology found for the claimant's subjective reports of symptoms of dizziness, headaches, and chronic pain. It is noted that post-hearing consultative examinations were proffered to the claimant's legal representative with no response. These examination reports showed only marginal findings with no opinions of significant limitations." Tr. 27-28.

An RFC assessment is meant to convey a claimant's ability to perform basic work activity when taking into account the claimant's limitations. Again, it is the *most* a claimant can do, not the least. The court finds that the ALJ evaluated the medical evidence of record and, based on the evidence as a whole, he assessed Plaintiff's RFC. Accordingly, the ALJ complied with the applicable rules and regulations in determining Plaintiff's RFC, properly considered the opinion

evidence, and did not err in finding Plaintiff could perform less than the full range of sedentary work.

B. Consideration of Plaintiff's Symptoms

Plaintiff alleges the ALJ's evaluation of her subjective complaints—specifically her complaints of dizziness—is deficient. Pl.'s Br. 18. The Commissioner argues that the ALJ accounted for Plaintiff's subjective complaints of dizziness "by reducing her to primarily seated work activity free from workplace hazards and that allowed her to use a cane when walking (Tr. 24)." Def.'s Br. 17. On Reply Plaintiff contends the "the ALJ mostly ignored the documentation of [her] dizziness and claimed that 'there is no etiology found' for the dizziness in order to discount it." Pl.'s Reply 5.

A claimant's subjective allegations of pain or other symptoms alone can never establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a); SSR 16-3p, 2016 WL 119029, at *2 (Mar. 16, 2016). Rather, the ALJ must consider "the extent to which [statements about subjective] symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence" in the record. *Id*. The Fourth Circuit has established a two-step process for determining whether a claimant is disabled by pain or other symptoms. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, a claimant must provide objective medical evidence showing that a medical impairment exists, which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. If the claimant meets this threshold obligation, the ALJ then considers the intensity and persistence of the claimant's pain or other symptoms, and the extent to which it affects his ability to perform work-related activities. 20 C.F.R. § 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ has the sole responsibility to weigh the

claimant's complaints against the record as a whole, and he may discount them when they are unsupported. *Craig*, 76 F.3d at 592-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's assessment of a claimant's statements, except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Edeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)). In assessing Plaintiff's statements regarding her symptoms, under its scope of review, the court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). This court is not tasked with the position of re-weighing evidence to make a new credibility determination. *See Hancock v. Astrue*, 667 F.3d 470, 471 (4th Cir. 2012) ("[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determination, or substitute our judgment for that of the [ALJ]") (citing *Johnson*, 434 F.3d at 653).

The ALJ outlined the two-step process that he is required to follow when considering Plaintiff's symptoms. Tr. 23-24. The ALJ discussed Plaintiff's hearing testimony "that she experienced residual symptoms including daily dizziness, difficulty balancing, and requiring the use of a cane for ambulation to prevent falling." Tr. 24. He also noted that Plaintiff testified her problems with vertigo worsened after her most recent stroke. *Id.* "After careful consideration of the evidence," the ALJ determined that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ then discussed the objective medical evidence of record. Tr. 24-26. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence… is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work"). The ALJ discussed the medical records related to Plaintiff's initial CVA and noted that "medical records dated September 2015 from Medical University of South Carolina (MUSC) showed that the claimant presented with dizziness, double vision, and left-sided paresthesias." Tr. 24. The ALJ discussed the results of a CT scan, MRI, and EKG and cited to medical notes which indicated "that despite event, the claimant was able to complete all activities of daily living independently, without the need for skilled occupational therapy. She was noted to have intact strength, range of motion, balance, endurance, and independence in functional mobility, with no deficits that would benefit from skilled physical therapy." Tr. 24-25. The ALJ noted that in March 2016 Plaintiff was referred to the Stoke Fellow Clinic of MUSC and she "reported that she frequently felt dizzy/off balance, most notably with bending forward or reaching overhead." Tr. 25. The ALJ noted that Plaintiff denied any new symptoms of weakness, sensory changes, or vision abnormalities; she was able to follow all commands; she had decreased sensation in her face and upper right extremity, but motor strength was 5/5 throughout; and her gait was normal. *Id.* The ALJ further noted that "[i]n accordance with the Modified Rankin Scale,[8] she was rated at '1', which corresponded to no

---

[8] The Modified Rankin Scale (MRS) is a single item, global outcomes rating scale for patients post-stroke. It is used to categorize level of functional independence with reference to pre-stroke activities rather than on observed performance of a specific task. The grades range from "0 – No

significant disability, despite symptoms, and able to perform all usual duties and activities (Exhibits 3F/10-13 and 4F/9-12)." *Id.* Continuing his discussion of the medical evidence of record the ALJ cited to MUSC treatment notes with Drs. Feng, Akhtar, Kwon, and Sujai from 2016 and 2017 that reported Plaintiff sometimes had an unsteady gait, she continued to have headaches, or she was using a cane for ambulation. *Id.* The ALJ noted that Plaintiff "was assessed with a '1' on the Modified Rankin Scale in July 2017 and September 2017 (Exhibit 10F/79-83, 88-92)." *Id.* The ALJ discussed Plaintiff's second stroke in March 2018 noting that her neurological examination was normal. Tr. 26. The ALJ noted that Dr. Papo reported "that although an MRI showed evidence of an acute infarction in the right occipital lobe, the claimant had no new neurological deficits on examination (Exhibit 10F/22-43, 52, 128-29, 131)." *Id.* Citing to report from Dr. Wabnitz, the ALJ noted that "[a]s before, the claimant was assessed with a '1' on the Modified Rankin Scale in May 2018 (Exhibit 10F/2-6)." *Id.*

Plaintiff cites to "multiple places in the record" that document Plaintiff's reports of dizziness, frequent headaches, and difficulty balancing. Pl.'s Br. 18-19. Plaintiff argues that the ALJ "largely ignored the documentation of dizziness." *Id.* at 19. However, as recounted above and as set forth in his decision, the ALJ cited to the same records identified by Plaintiff. Tr. 25-26. The court finds that Plaintiff's citation to selective evidence does not render the ALJ's decision unsupported by substantial evidence because the ALJ's decision reflects careful consideration of the medical evidence and the doctors' reports that rated Plaintiff's abilities despite her impairments. The ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because they are not consistent with or

---

symptoms" to "5 – Severe disability: bedridden, incontinent, and requiring constant nursing care and attention." *See* https://strokengine.ca/en/assessments/modified-rankin-scale-mrs/ (last visited June 11, 2021).

supported by the medical evidence as a whole." Tr. 27. The ALJ discussed the medical evidence and concluded:

> In sum, the above residual functional capacity assessment is supported by the weight of the evidence of record. There are no medical findings of such severity that suggest that the claimant is completely incapable of all work activity. There are positive findings that somewhat support some of the claimant's subjective symptoms and reported limitations. While the medical evidence of record establishes the existence of the above-mentioned impairments, the objective findings do not confirm that these impairments are of such a severity that they could reasonably be expected to produce the degree of pain and functional limitations alleged. Multiple evaluations for stroke level severity were "1" indicative of no significant disability, able to perform usual duties and functions.

*Id.*

As an initial matter, Plaintiff bears the burden of producing evidence demonstrating how her impairments affect her functioning during the relevant period. 20 C.F.R. § 404.1512(a). "Likewise, when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p, 1996 WL 374184, at *3. "[A] condition that does not result in any functional impairment is not relevant to the RFC analysis." *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005). Although doctors documented Plaintiff's reports of dizziness and headaches, as the ALJ noted, they found no etiology for those symptoms and, based on their Modified Rankin Scale scores, did not find that the symptoms affected her functioning. The ALJ's discussion of the medical evidence, which addresses Plaintiff's symptoms including dizziness, is sufficient to allow the court to conclude the ALJ considered Plaintiff's statements and incorporated them into his RFC assessment. *Boyd v. Berryhill*, No. CV 6:17-2905-RBH-KFM, 2018 WL 6834609, at *7 (D.S.C. Dec. 4, 2018), *report and recommendation adopted sub nom. Boyd v. Comm'r of Soc. Sec. Admin.*, No. 6:17-CV-02905-RBH, 2018 WL 6831171 (D.S.C. Dec.

28, 2018) (finding that "the ALJ amply accounted for any physical limitations resulting from vertigo by restricting the plaintiff to sedentary work with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; no climbing of ladders or scaffolds; and no exposure to vibration or exposure to work hazards").

The ALJ adequately explained the reasons supporting his determination that Plaintiff's statements of disabling symptoms were not entirely consistent with the record evidence. Here, the ALJ followed the applicable regulations in considering and discounting some of Plaintiff's subjective complaints. Tr. 22-23. Plaintiff's disagreement with the ALJ's decision is no reason to overturn it. *Johnson v. Barnhart*, 434 F.3d at 653 (quoting *Craig*, 76 F.3d at 589). The court therefore finds that Plaintiff has failed to show that the ALJ's evaluation of Plaintiff's subjective complaints is deficient, unsupported by substantial evidence, or controlled by an error of law.

C.  Ability to Perform PRW

Plaintiff asserts the ALJ's finding that she could return to PRW is not supported by substantial evidence. Pl.'s Br. 19. Plaintiff argues that the ALJ failed to address the mental duties of her work as a court clerk, and he failed to reconcile the finding that she had mild limitations in concentration, persistence, and pace with the finding that she could perform her past work.[9] *Id.* at 21-25. The Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff could return to PRW. Def.'s Br. 19-22.

SSR 82–62 provides in pertinent part as follows:

---

[9] Plaintiff also alleges that based on the DOT description her past work "requires mathematical abilities inconsistent with the limitations evidenced by Dr. McClain's evaluation." Pl.'s Br. 20. However, as previously discussed in this Order, although the ALJ acknowledged Dr. McClain's opinion that Plaintiff "would likely have problems with tasks that used more than simple mathematics computation skills," Tr. 27, the ALJ did not find it necessary include any math-related limitations in his RFC.

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental demands of the past job/occupation.

3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.

Citing to the DOT description of the job duties of a court clerk, Plaintiff contends that while the job required little physical labor, it required "significant mental abilities" including level 4 reasoning, level 4 reading, and a specific vocational preparation of 6. Pl.'s Br. 21-22. Plaintiff argues the ALJ "failed to address the significant mental duties of [her] past skilled work, warranting remand." *Id.* at 22. Plaintiff also argues the ALJ failed to provide an assessment of "how the mild mental limitations are compatible with the performance of skilled work." *Id.* at 26.

In her form disability report Plaintiff indicated that she stopped working because of her medical conditions of high blood pressure, hyperthyroidism, diabetes, blurred vision, ataxia, paresthesia, and CVA. Tr. 183-84. She did not list any mental conditions. At the administrative hearing, the ALJ asked Plaintiff to describe her job duties and she responded that her duties were like a customer service person—she filled out applications for people who came to court, set court dates, provided forms, and directed people on "where to go and what to do next." Tr. 39. Plaintiff testified that she did not think she could return to work because she was having problems with her eyes, Tr. 40, but acknowledged that if her vision was a pre-stroke levels she thought she would be able to return to work although she stated she gets "terrible headaches looking at the computer," Tr. 43. Plaintiff testified that she still uses a computer or keyboard. Tr. 45. When asked about any

residual deficits of her stroke that impacted her ability to work, Plaintiff testified that she has memory issues. Tr. 45-46. Plaintiff confirmed that her job was "high pressure" and that because of the stroke she would have difficulty with multi-tasking. Tr. 54.

The ALJ asked the VE to identify Plaintiff's past work and she described it as court clerk, DOT number 243.362-101, sedentary exertional level with an SVP of 6, and skilled. Tr. 55. In response to questions from the ALJ, the VE stated that an individual with Plaintiff's background with certain postural and environmental limitations would be able to return to Plaintiff's past work, even with the use of a handheld assistive device for ambulating. *Id.* The VE testified that the person would be unable to perform Plaintiff's past work if the individual could "only occasionally work with small objects, read small print, or work with other objects that require fine visual acuity." Tr. 55-56. Lastly, the VE testified the individual would be unable to perform Plaintiff's past work if the person was unable to "sustain sufficient concentration, persistence, or maintain pace for a combination of reasons." Tr. 56.

At Step Two of the sequential evaluation process the ALJ determined that Plaintiff's "medically determinable mental impairment of residuals of a CVA does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Tr. 21. In his evaluation of Plaintiff's mental functioning, the ALJ determined that Plaintiff had a mild limitation in the area of concentrating, persisting, or maintaining pace. Tr. 22. The ALJ noted Plaintiff's testimony that since having the strokes she had difficulty concentrating and remembering, and that Plaintiff also "noted trouble with maintaining concentration on a task until completion." *Id.* The ALJ cited to Plaintiff's Function Report where Plaintiff indicated that she could pay attention 3-5 minutes, and she had no problem following written instructions or spoken instructions, although she may have to ask that the instructions be repeated. *Id.* Based on

28

his "consideration of the entire record" the ALJ's RFC assessment contained no mental limitations.

Tr. 23. At Step Four of the sequential evaluation process, the ALJ found that Plaintiff is capable

of performing her PRW. Tr. 28. The ALJ made the following determination:

> In this case, the vocational expert testified that the claimant's past relevant work as
> a court clerk was classified as sedentary exertional, skilled work in the Dictionary
> of Occupational Titles (DOT). I asked the vocational expert whether a person with
> the physical limitations imposed by the claimant's medical impairments could meet
> the demands of the claimant's past relevant work. The vocational expert testified
> that given all of these factors, the claimant could return to her past relevant work as
> a court clerk is fully credible and adopts her findings in full pursuant to Social
> Security Ruling 00-4p.

> In comparing the claimant's residual functional capacity with the physical and
> mental demands of this work, I find that the claimant is able to perform it as actually
> and generally performed.

Tr. 28. "The Commissioner may employ the services of a VE at step four of the sequential

evaluation process to help determine whether a claimant can perform his past relevant work."

*Cabbagestalk v. Astrue*, No. CIV.A. 3:09-1693, 2010 WL 3270972, at *10 (D.S.C. July 28, 2010),

*report and recommendation adopted,* No. CIV.A. 3:09-1693-MBS, 2010 WL 3270046 (D.S.C.

Aug. 18, 2010) (finding the ALJ met the second requirement of SSR 82-62 by asking the VE about

the demands of the claimants PRW and the VE stating the position was light and unskilled and

further provided a DOT number as a descriptor).

The claimant bears the burden of establishing that she is incapable of performing her PRW.

*See Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995); *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th

Cir. 1992). Plaintiff does not present any evidence or any information from her medical providers

that suggests she is unable to work or unable to perform her PRW. In fact, as discussed earlier in

this Order and as noted by the ALJ, Plaintiff's treating providers consistently found that her post-

stroke Modified Rankin scores indicated that she was able to perform all her usual duties and

activities. Furthermore, in his Medical Source Statement of Ability To Do Work-Related Activities

(Mental), Dr. McClain indicated Plaintiff had mild limitations in the ability to understand, remember, and carry out instructions—including complex instructions. Tr. 726. The form defined mild as "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* Because Plaintiff failed to meet her burden of demonstrating she could not return to her past relevant work, the ALJ's determination properly included only those limitations supported by the record.

Following the requirements of SSR 82-62, the ALJ made a specific finding of fact as to Plaintiff's RFC. Tr. 23 (finding Plaintiff had the RFC to perform less than the full range of sedentary work with postural and environmental limitations). He also made a finding of fact as to the physical and mental demands of Plaintiff's PRW. *See* Tr. 24, 28 (noting Plaintiff's testimony regarding her past work and noting that the DOT classified work as a court clerk as sedentary and skilled). Finally, he concluded that Plaintiff's RFC would allow her to return to her PRW. Tr. 28 (finding Plaintiff capable of performing her PRW as a court clerk as actually and generally performed). Under the law, this court's review is confined to determining whether the ALJ employed correct legal standards in making factual findings supported by substantial evidence. *Richardson v. Perales*, 402 U.S. at 390; *Craig*, 76 F.3d at 589. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citation omitted). "[T]he threshold for such evidentiary sufficiency is not high. . .. It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* The issue then, is not whether this court agrees with the ALJ's conclusions but whether "more than a mere scintilla" of evidence supports them. *See Hays*

*v. Sullivan*, 907 F.2d at 1456. Based on the record, the court finds the ALJ applied correct legal standards and made findings supported by substantial evidence.

IV.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

June 11, 2021                                           Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge